## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | No. 22-cr-30 (TJK) |
| | : | |
| v. | : | |
| | : | |
| ROBERT THOMAS SNOW, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

On January 6, 2021, Robert Thomas Snow walked into the United States Capitol. He entered through an open door. While inside, he did not break, damage, or steal any property; hurt, injure, accost, or threaten law enforcement (or anyone else); go into any private office space or proceed to the well of the House or the Senate. Mr. Snow was not involved in planning or leading any of the activities that the crowd was engaged in on January 6, 2021, nor was he associated with any of the groups reported to be responsible for aspects of what occurred that day.

Mr. Snow is a 78-year-old veteran, engineer, and pilot, who worked on the NASA Program. He has only been arrested *once in his life* — for the events at issue in this case. Mr. Snow knows that, notwithstanding these facts, his mere participation and entry into the U.S. Capitol played a role in the events that transpired. The images of what happened on January 6, 2021 will remain with him for the rest of his life. His association with that day constitutes a permanent blemish on his record and is etched in stone, with dozens of stories and articles on the internet about his arrest. This has resulted in Mr. Snow receiving threats to his personal safety, the recordings of which were shared with local law enforcement and the Government.

Mr. Snow cannot change the past; he can only learn from it as he strives to live a life worthy

of forgiveness. If he could do it all over again, he would not have entered the Capitol that day. Mr. Snow is remorseful for his own personal conduct, for those injured, and for the damage that occurred. Mr. Snow's remorse is not measured merely by his words, but rather confirmed by his actions following January 6, 2021, as he did *everything* that the criminal justice system could possibly hope and expect from someone who wanted to accept full responsibility and atone for his actions.

Mr. Snow provided substantial assistance to the Government relating to its January 6 investigation, which included numerous meetings and conferences with agents and the voluntary production of physical and electronic evidence to law enforcement without a warrant. He admitted his presence inside the Capitol, described what he was wearing, provided the blue cooler that contained his water and soft drinks, and identified himself on surveillance video in photographs. He provided his cell phone to law enforcement for its analysis and sent the pictures that he took on January 6 to FBI agents. Mr. Snow's cooperation began *before* he was appointed counsel and *before* he had any knowledge of the charges that would be filed against him. Mr. Snow was a quintessential voluntary cooperator from the start.

After his voluntary surrender, Mr. Snow was *shackled* in a cold prison cell in Arkansas for over five hours while awaiting his initial presentment on *misdemeanor* charges. Upon presentment, Mr. Snow immediately accepted responsibility in this case, did not file a single motion, nor did he request additional discovery from the Government. Mr. Snow actually requested that his status hearing be moved up so that he could enter a guilty plea earlier than when it was initially scheduled. Mr. Snow also tried to pay his special assessment prior to sentencing but was advised by the Clerk of the Court that he could only pay it after sentencing. Nonetheless, he has authorized his counsel to deposit checks with the Clerk of the Court for both his required restitution and special assessment obligations *immediately* after the Court's Judgment is issued.

Mr. Snow's conduct inside the Capitol, and his conduct with law enforcement before and after he was detained, distinguishes him from the hundreds of other defendants before this Court and, unlike so many of those individuals, Mr. Snow cooperated completely and extensively with the Government from the earliest possible moment. These extraordinary circumstances — and Mr. Snow's history and characteristics — led the United States Probation Office, upon its review of the record, to assert its belief that there was a basis for a departure in this case, even in the instance when the Voluntary Sentencing Guidelines are not applicable to the charged misdemeanor offense. *See* PSR, ¶¶ 98-99. U.S. Probation's reasons for its position are compelling:

> This is the defendant's first arrest and conviction. He is a 78-year-old married man, who served in the armed forces, has extensive work history, and has no history of drug use. Mr. Snow has serious financial constraints and serious medical issues, including being legally blind in one eye. Mr. Snow is awaiting resolution of this matter to undertake necessary medical procedures. Furthermore, he is the caretaker of his [disabled] son and designated guardian. Lastly, Mr. Snow admitted to the instant offense and cooperated fully with law enforcement during multiple meetings of the investigation. The defendant was inside the U.S. Capitol, for a brief period, he did not assault or threaten anyone and did not steal or deface any property.

PSR, ¶ 99. Contrary to the Government's assertion otherwise, this is *not* a case that warrants incarceration. With indignation reserved for a violent lifelong criminal, the Government brushes aside Mr. Snow's previously unblemished life, extensive service to our country, and serious debilitating medical conditions, as irrelevant and unpersuasive. While the Government has a compelling obligation to prosecute those involved in the events of January 6, 2021, in doing so, it cannot lose its perspective and forget its obligations to be just, fair, and consistent in the process.

As discussed below, Mr. Snow's conviction in this case and the process by which it has come about — including threats to him and his family — has created deterrence for any future similar conduct. Mr. Snow's brief period inside the Capitol measured against 78 years of an extraordinary life — devoid of any criminal history — warrants leniency. The Government has obtained its

3

conviction and now this matter should be CLOSED.

## FACTUAL BACKGROUND

As set forth in his Statement of Offense (D.E. 20), Mr. Snow entered the open Senate Wing Door of the United States Capitol on January 6, 2021 at 2:15 p.m. He walked through various wide-open areas of the building to include the Rotunda and Statuary Hall and subsequently left in 43 minutes. Photographs of Mr. Snow's entry and exit are enclosed, as well as Mr. Snow walking inside. Notably, upon exiting, a law enforcement officer put his hand on Mr. Snow's shoulder as they had a pleasant conversation while he was leaving. At no time, did Mr. Snow break, damage, or steal any property; hurt, injure, accost, or threaten law enforcement (or anyone else); go into any private office space or proceed to the well of the House or the Senate.[1] The photograph below depicts Mr. Snow's entry into the Capitol [*see* yellow box]:



---

[1] This Court needs no reminder of what occurred on January 6, 2021. For some unknown reason, the Government chooses to include in its sentencing memorandum photographs of the breach of the Capitol through the smashing of windows, even though Mr. Snow did not partake in any destruction of property. As discussed herein, we judge a man by *his* actions alone and do not attribute conduct to him that everyone else undertook, but him. If an officer is assaulted, a vehicle torched, a church burnt,

The photographs below depict Mr. Snow walking by himself in Statuary Hall and the Rotunda:





---

a Molotov cocktail thrown, or a building damaged, we should hold those specific individuals responsible, but we have never charged everyone who was present at that location at that moment because of the conduct of the responsible individuals. While the Government initially acknowledged this in a prior sentencing memorandum (*see*, *e.g.*, *United States v. Thomas Vinson*, No. 21-cr-355-02 (RBW) (D.E. 44 at 19) ("[E]ach defendant should be sentenced on their individual conduct")), it, nonetheless, in this case, discusses extensively what others did at the Capitol in the absence of any threatening, assaultive, violent, or destructive conduct committed by Mr. Snow. Fortunately, our system of justice does not operate in this manner.

Below is a photograph of Mr. Snow having a friendly conversation with a U.S. Capitol Police

Officer as he heads to the exit:



Notwithstanding, the events of January 6, 2021 inside the U.S. Capitol marked a low point

for the democratic process in the United States, coming, unfortunately, after years of heated rhetoric

in the political process that built distrust in our institutions. Mr. Snow traveled to Washington, D.C.,

for the purpose of attending a "Stop the Steal" rally organized by then President Trump. After that

event ended, he proceeded down to the Capitol with the crowd. He was not at the front of the crowd.

He did not break into, or force entry into the Capitol, nor did he encounter any law enforcement or

others directing him to leave as he entered the Capitol. He did not force his way past law enforcement,

and, after encountering law enforcement, made his way to exit the Capitol. He was present in the

Capitol for 43 minutes. In that time, Mr. Snow did not break, damage, or steal any property; hurt,

injure, accost, or threaten law enforcement (or anyone else); go into any private office space, or

proceed to the well of the House or the Senate. Mr. Snow was not involved in any planning or leading

any of the activities that the crowd was engaged in on January 6, 2021, nor was he associated with any of the groups reported in the media to have been associated with certain aspects of what occurred that day. He was, in short, walking inside the Capitol.

In its twenty-eight-page sentencing memorandum (D.E. 26) for a 78-year-old man with no prior arrests who engaged in a petit misdemeanor offense (with no allegations of assaultive or threatening conduct), the Government makes several remarkable assertions. For example, the Government would like to equate patting someone on the back as being a facilitator of the attack or supporter of violence. It is not. While the Government searches for conduct to justify its indefensible request for incarceration, reverting to pats on the back, in the absence of assaultive or threatening conduct, justifies only leniency in this case, and nothing more. The Government also admittedly speculates that Mr. Snow brought beer to the Capitol. He did not. The beer bottle was given to him by another protestor, and it was left by Mr. Snow completely full (undrunk) on the hallway floor. This is why every other picture of Mr. Snow in the Capitol, absent the hallway, shows Mr. Snow *not* holding a beer. To the extent Mr. Snow should have brushed off the protestor and refused to hold the beer, that alone cannot justify the Government's request for incarceration.

We offer these facts not as excuses, because there are no excuses for the violation of law that occurred that day, but rather and solely to place into context Mr. Snow's activities on January 6, 2021, including for comparison purposes with others who did engage in those activities that day, and for purposes of weighing his activities under comparator factors that the Government has set forth in other sentencing memoranda, and which, it has done here.

1.    **Mr. Snow's History and Characteristics.**

Mr. Snow, age 78, honorably served the United States in the armed forces from 1962 (upon his high school graduation) until 1968, which included service in Vietnam. *See* Presentence Report

("PSR"), ¶¶ 42, 61 (D.E. 24). He was the father of four children, three grandchildren, and seven great grandchildren. *Id.* at ¶¶ 43-44. He buried one of his children and has a son with a traumatic brain injury, of which he was appointed guardian and oversees all major healthcare, life, and financial decisions. *Id.* at ¶ 43 & n.5. Following college and various training programs, Mr. Snow was an engineer, pilot, investigator, worked for the NASA Program, and owned a company that consulted on marina management and building projects. His extensive history of work and service is set forth in extensive detail in the PSR. *Id.* at ¶ 65.

The later part of Mr. Snow's life has not been easy. He and his wife have very limited finances (relying on social security income) and Mr. Snow suffers from a number of debilitating conditions. In August 2016, Mr. Snow suffered a heart attack due to atherosclerosis in three arteries, which resulted in damage to his mitral valve. *Id.* at ¶ 56. He underwent an angioplasty to place three stents in affected arteries and now takes five (5) cardiac drugs a day permanently. *Id.* He is practically blind in his left eye due to a macular hole and retina bleeding and requires eye surgery immediately after this case is resolved. *Id.* at ¶ 54. He also suffers from extensive hearing loss in his left ear from a rocket explosion that occurred near him in Vietnam (while a contractor for the Government), which resulted in a split eardrum and bleeding and 60 percent hearing loss that has deteriorated with age. He also suffers from prostate issues and arthritic age-related conditions that affect his back, hips, and legs.

In its sentencing memorandum (at 19-20), the Government, without any concern or empathy, dismisses Mr. Snow's age and health as having not stopped him from being in Washington, D.C. on January 6, 2021 and that "his age and life experiences should have inured him against the impetuousness of some of the younger rioters." In doing so, the Government completely disregards U.S. Probation's findings — as if they were never made — that Mr. Snow needs immediate surgery,

is suffering from debilitating conditions, and his life and very limited role on January 6, separates him from other defendants. The Government momentarily forgets itself that the crime at issue here is parading and demonstrating (with no evidence of violence or assaultive conduct) of which Mr. Snow sincerely accepted responsibility for and cooperated extensively regarding upon his initial meeting with law enforcement.

**2.      Mr. Snow's Immediate and Sincere Acceptance of Responsibility and Extensive Cooperation.**

The FBI traveled to Mr. Snow's residence on multiple occasions. He met with agents at his home and provided the entire factual background relating to his trip to Washington, D.C. from Arkansas and his entry into the U.S. Capitol on January 6, 2021. He identified himself in photographs, provided the blue cooler that he wore on January 6, 2021, so that they could identify him in other photographs from that day, provided his cell phone to law enforcement to be examined, and provided photographs that he took on January 6, 2021. Mr. Snow truthfully and thoroughly complied with all inquiries made by law enforcement in its investigation. Mr. Snow also told the FBI that while inside the Capitol, he alerted a Capitol Police Officer to the fact that an individual was tampering with a breaker box/instrument panel in the Capitol.

Upon his arrest, Mr. Snow immediately accepted the Government's plea offer and moved up his status hearing to enter a guilty plea earlier than was required. He has been in complete compliance with his conditions of release since his arrest in this matter and the attached letter (as Exhibit 1) to this memorandum, highlights in his own words, his sincere acceptance of responsibility.

On April 6, 2022, Mr. Snow's counsel received an invitation from the U.S. House Select Committee to Investigate the January 6th Attack on the U.S. Capitol (the "Committee") to be interviewed. The next day, Mr. Snow accepted the Committee's invitation but requested that it occur

after his sentencing and offered three dates for the interview: July 11-13, 2022. To date, no response has been received from the Committee.

### 3.      Adverse Consequences to Mr. Snow as a Result of His Arrest.

Notwithstanding his full cooperation and absence of a criminal history, Mr. Snow was charged by Complaint with the same four misdemeanors as everyone else who entered the U.S. Capitol on January 6, 2021. An arrest warrant was issued for his arrest, rather than the issuance of a summons or the invitation for him to appear in the District of Columbia by zoom to be arraigned on an Information. By proceeding with an arrest warrant, Mr. Snow was forced to be detained and shackled at the United States District Court for the District of Arkansas for over five hours in a cold holding cell while he waited to see a judge. At his initial presentment, the U.S. Magistrate in Arkansas denied all of the Government's requested additional conditions of release absent the most basic condition to report as requested given Mr. Snow's lack of any criminal history on the charged misdemeanor offenses. The U.S. Magistrate Judge did not include the condition that Mr. Snow remove all firearms from his residence. Mr. Snow, nonetheless, on his own volition, removed all firearms from his residence, prior to his initial appearance in Washington, D.C., in anticipation of the condition being imposed by this Court, which it was. Mr. Snow undertook this voluntarily even though he has been a trained, certified, and licensed firearm owner for years.

Upon his arrest, the Government devoted a specific page of their website to Mr. Snow's case, wherein copies of his Complaint and Statement of Facts and subsequent plea paperwork could be viewed and downloaded free of charge. *See* https://www.justice.gov/usao-dc/defendants/snow-robert, last visited June 30, 2022. After television networks and print media were made aware of his arrest, Mr. Snow received threats to his safety. As a result of those threats, the Cleburne County Sheriff's Office (Heber Springs, Arkansas) opened an investigation and the matter was assigned to

Detective Angelo Aldrighetti. Audio recordings of the threats were sent to the Cleburne County Sheriff's Office and forwarded to the assigned Assistant United States Attorney in this matter.

Mr. Snow lives a significant distance away from law enforcement, and given the condition that he cannot possess a firearm, he is unable to defend himself or his wife from an intruder, even when someone recently came onto his property during the pendency of this case. *See* PSR, ¶ 30 (noting an "intruder" on his "property," which was a very "scary" moment). This has unfortunately put Mr. Snow's wife in fear for her life with no adequate protection available. Every slight noise builds her anxiety and brings her to tears.

During the course of this case, the U.S. Probation Office in Arkansas conducted an *unannounced* search of Mr. Snow's residence as part of being placed on personal recognizance, which is not the policy of the Pretrial Services Agency in D.C., which provides advanced notice. As part of the preparation of the PSR, Mr. Snow had a second inspection of his residence, initially unannounced, but when Mr. Snow was not home, he was able to schedule another inspection the very next day after conferring with U.S. Probation. While Mr. Snow was charged with a non-economic petit misdemeanor offense, he was also required to provide a full accounting of his entire finances and assets and spent days gathering relevant records.

## ARGUMENT

Mr. Snow now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the United States Probation Office, Mr. Snow faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B misdemeanor, the Sentencing Guidelines do not apply. *See* 18 U.S.C. § 3559; U.S.S.G. §1B1.9.[2]

---

[2] On June 7, 2022, Mr. Snow made payment by check to the Clerk of the United States District Court for his required $10.00 special assessment. On June 15, 2022, the Clerk of the Court returned Mr. Snow's payment and stated, "Restitution and other fees are not due until after you have been formally

Pursuant to 18 U.S.C. § 3553 (and specifically those portions of it that are applicable to this misdemeanor, non-guideline sentence), factors this Court is to consider in imposing the sentence, which should be sufficient, but not greater than necessary, to comply with the purposes of sentencing are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## 1.      The Nature and Circumstances of the Offense.

In various sentencing memoranda concerning January 6, 2021, the Government has recognized that not all actors are equal in terms of culpability and has systemically been setting forth factors for judges to consider in relation to January 6, 2021 sentences,[3] including: (i) whether, when,

---

sentenced." Jun. 15, 2022 Ltr. at 1 (attached hereto as Exhibit 2). Notwithstanding his fixed income, Mr. Snow has authorized his counsel to file a check for his special assessment ($10.00) and a check for the full payment of agreed restitution ($500.00) immediately upon the conclusion of the sentencing. Accordingly, there will be no need for a period of probation to ensure satisfaction of the referenced payments.

[3] *See United States v. Reeder*, No. 21-cr-166, Gov't Sent. Mem. at 6-7 (D.E. 26).

and how the defendant entered the Capitol building; (ii) whether the defendant engaged in any violence or incited violence; (iii) whether the defendant engaged in any acts of destruction; (iv) the defendant's reaction to acts of violence or destruction; (v) whether during or after the riot, the defendant destroyed evidence; (vi) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (vii) the defendant's statements in person or on social media; (viii) whether the defendant cooperated with, or ignored, law enforcement; and (ix) whether the defendant otherwise exhibited evidence of remorse or contrition. We submit that two additional factors should also be considered: (x) whether the defendant was involved with planning or coercing the events of January 6, 2021;[4] and (xi) whether the defendant timely offered to accept responsibility for his or her involvement and offered to enter a plea of guilty at a time that would have avoided the use of limited judicial, investigative, and prosecutorial resources.[5]

Mr. Snow did not force entry into the Capitol and entered through a door. This factor weighs in favor of him. Mr. Snow neither engaged in, nor incited violence, nor did he encourage, promote, or otherwise tolerate any violence, which shows both the third and fourth factors also weigh in his favor. Mr. Snow did not destroy any evidence, and, in fact, fully cooperated with the FBI to provide all evidence in his possession upon his first contact with agents, even though he was under no legal obligation to do so. Again, this fifth factor weighs strongly in his favor. Mr. Snow was in the Capitol a limited period of time, and did not travel to or enter any rooms or offices in the Capitol or the Senate

---

[4] The Government has itself pointed to this as a relevant factor. *See*, *e.g.*, *United States v. Morgan*, No. 21-cr-164, Gov't Sent. Mem. at 6 (D.E. 22).

[5] *See*, *e.g.*, *United States v. Bustle*, No. 21-cr-238, Gov't Sent. Mem. at 6 (D.E. 38) ("The government also notes that from the outset, through his attorney, Joshua Bustle expressed a desire to plead guilty, acknowledge his conduct, and promptly resolve his case. When recommending an appropriate sentence, the government gives ***significant*** weight to the defendant's early resolution of this case.") (emphasis added).

or House Chamber, which weighs in his favor.[6] Mr. Snow made no statements on social media endorsing the violence that occurred, which also weighs in his favor.

In terms of cooperation with law enforcement, a separate discussion is warranted. Mr. Snow's activities here, including early, full, and free disclosure to the FBI of information and evidence about himself and others (including making his cellphone available) is extensive. If, as the Government has conceded in other January 6, 2021 cases, there is a spectrum of conduct and culpability in the events of January 6, 2021, there is also a spectrum of conduct in terms of cooperation that followed. Mr. Snow's activities here would likely warrant a Section 5K1.1 letter, if the Guidelines applied.

The January 6, 2021 investigation continues, but a cogent consideration for *this* Court, in *this* sentence, is whether or not it should encourage the sort of cooperation that Mr. Snow exhibited, by giving due and full consideration to it in the formulation of a sentence. We submit that to fail to give significant weight to his cooperation is to tell the world (and the hundreds of other defendants) that there is no benefit to significant cooperation. With respect, given the breadth and scope of the investigation, and government resources involved in that investigation, the Court should send the exact opposite message. *This* factor, for *this* Defendant, is entitled to significant weight in the formulation of any sentence.

Mr. Snow was not involved with planning or coercing the events of January 6, 2021. As to the final factor, we suggest that the Court consider that Mr. Snow repeatedly, from the outset, expressed a desire to accept responsibility, significant remorse for his conduct, and an interest to promptly resolve this case. The Government has elsewhere, in other January 6, 2021 cases,

---

[6] *See United States v. Morgan*, No. 21-cr-00164, Gov't Sent. Mem. at 6 (D.E. 22) (identifying location in the Capitol as a relevant factor and questioning whether the defendant entered specific areas).

acknowledged that this is entitled to "significant weight."[7]

**2.      The History and Characteristics of the Defendant.**

As set forth in the PSR, Mr. Snow has no criminal history and was never arrested before this case. If the Sentencing Guidelines did apply to his offense of conviction, he would have no criminal history points. USSG § 4A1.2(c)(2). Accordingly, he would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Mr. Snow has held life-long employment with no history of drug abuse or violence. These extraordinary circumstances and Mr. Snow's history and characteristics led the United States Probation, upon its review of the record, to assert its belief that there was a basis for a departure in this case, even in the instance when the Voluntary Sentencing Guidelines do not even apply to the charged misdemeanor offense (*see* PSR, ¶¶ 98-99). U.S. Probation's reasons for its position are compelling:

> This is the defendant's first arrest and conviction. He is a 78-year-old married man, who served in the armed forces, has extensive work history, and has no history of drug use. Mr. Snow has serious financial constraints and serious medical issues, including being legally blind in one eye. Mr. Snow is awaiting resolution of this matter to undertake necessary medical procedures. Furthermore, he is the caretaker of his son and designated guardian. Lastly, Mr. Snow admitted to the instant offense and cooperated fully with law enforcement during multiple meetings of the investigation. The defendant was inside the U.S. Capitol, for a brief period, he did not assault or threaten anyone and did not steal or deface any property.

PSR, ¶ 99. This factor supports a more lenient sentence.

**3.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law.**

The events of January 6, 2021 were both serious and tragic, yet, as reflected above, not every actor that day has equal culpability. Is it appropriate to treat those who enter and then leave the same as those who entered and stole or damaged property, those who organized and incited others to act, those who went into sensitive or private areas, or even worse, those who threatened or injured law

---

[7] *See United States v. Bustle*, No. 21-cr-238, Gov't Sent. Mem. at 6 (D.E. 38).

enforcement? To ask these questions is to answer them. The appropriate consideration under this statutory factor is ***not*** whether the events of January 6, 2021 were serious (because there is no dispute that they were). Instead, the appropriate consideration is to weigh and judge *each defendant's* activities and involvement in the events of that day, and we submit that consideration of that conduct relative to the factors set forth above, and articulated by the Government in other sentencing memoranda related to January 6, 2021 cases, must be considered in that regard.

Over 800 individuals have been charged in connection with the events of January 6, 2021. Some with felonies. Some with misdemeanors. Each of these cases involves a wide range of conduct, both before, during, and after January 6, 2021 by the particular defendant. Each of these cases should be judged based on the defendant's conduct and not the conduct of others.

Given these factors and for the reasons discussed above, a non-custodial sentence is appropriate here.

**4.     Adequate Deterrence (Specific and General).**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. *See* 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Specific deterrence is obtained for the defendant by the prosecution and conviction itself. The personal and reputational consequences Mr. Snow has suffered are more than sufficient to discourage him from engaging in similar conduct. Especially when Mr. Snow has led an otherwise crime-free life.

As for general deterrence, several observations can be made. *First*, the prosecution itself (and the publicity of conviction) all serve as a significant general deterrence. *See*, *e.g.*, *Wayte v. United States*, 470 U.S. 598, 607 (1985) (observing that any prosecution has a "general deterrence value"); *United States v. Gamarra*, 940 F.3d 1315, 1321 (D.C. Cir. 2019) (observing that prosecution itself

provides general deterrence). If that is true generally, it is especially true here.

The misdemeanor charges in this case received national and local press.[8] There is every indication that the public condemnation of Mr. Snow will continue for the foreseeable future. Unlike almost any other federal misdemeanor charge (besides other defendants in January 6 cases), no one would want to expose themselves to the level of vitriol that is being attributed to January 6 defendants — regardless of the level of their participation or the severity of their particular charges.  The point of this observation is that the publicity involved in these cases is itself providing significant general deterrence unlike any run of the mill federal misdemeanor case. It might also be observed that Google and the news articles on this matter will outlive Mr. Snow. When whatever sentence this Court imposes is completed, the headlines will remain. January 6, 2021 will be a day that lives in infamy, and, for those who entered the Capitol, it will be a lifelong blemish on their record.

*Second*, while the events of January 6, 2021 were unacceptable by any measure, and must be deterred from ever occurring again, it would be inappropriate to treat every participant in that event equal, without regard to the circumstances of their involvement, and without regard to the cooperation and acceptance of responsibility they exhibited afterwards.

Indeed, as observed by the district court in the Supreme Court's decision in *Gall v. United States*, probation "rather than an act of leniency, is a substantial restriction of freedom." 552 U.S. 38, 44 (2007) (punctuation omitted). The *Gall* Court emphasized that the defendant would have to

---

[8] *See*, *e.g.*, https://katv.com/news/local/arkansas-man-pleads-guilty-to-role-in-jan-6-insurrection-at-us-capitol-united-states-robert-thomas-bob-snow-heber-springs-little-rock-washington-district-columbia-riot-police-president-donald-trump-joe-biden-news (last visited June 30, 2022); https://www.thv11.com/article/news/crime/bob-snow-arkansas-january-6-insurrection-guilty/91-20239d25-bb72-4395-a0e2-00536cdd3512 (last visited June 30, 2022); https://www.nwaonline.com/news/2022/jan/06/heber-springs-man-faces-federal-charges-in-2021/ (last visited June 30, 2022); https://www.4029tv.com/article/robert-snow-arkansas-sentence/40245939# (last visited June 30, 2022).

"comply with strict reporting conditions." *Id.* The Court also noted that the defendant would "not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court." *Id.* If this Court believes probation is necessary, given the facts of this case as weighed by the statutory factors, a probationary sentence in this case is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553.

**5.    Sentencing Disparities.**

It is difficult to find any particular set of facts that is right on point. Mr. Snow's actions on January 6, 2021 and process of exiting upon contacting with law enforcement is less culpable than the defendant in *United States v. Blauser*, No. 21-cr-386, who received a $500 fine and $500 in restitution, and with equal personal mitigating factors, such as, being an elderly veteran with health issues.[9] Mr. Snow's actions on January 6, 2021 and extensive cooperation upon contact with law enforcement also makes him less culpable than the defendants in *United States v. Doyle*, No. 21-cr-324 (sentenced to 2 months' probation, $3,000 fine, and $500 in restitution) and *United States v. Cordon*, No. 21-cr-269 (2 months' probation, $4,000 fine, $500 in restitution).

However, when it comes to the above referenced cases, as here, we have an individual who did not engage in any preplanning or coordination prior to his entry into the Capitol. There, as here, we have a Defendant who did not personally engage in acts of violence or destruction of property, or incite the same. There, as here, we have an individual who only remained in the Capitol for a brief period of time. There, as here, we have an individual who cooperated with law enforcement prior to

---

[9] We recognize that Mr. Blauser was inside the Capitol, in part, to protect his companion that day, but he spent almost an hour in the Capitol, made provocative statements, and had interactions with law enforcement that were not cooperative, compared to Mr. Snow who was completely cooperative.

his arrest, including submitting to a voluntary interview and search of his cellphone. There, as here, we have an individual who timely admitted to his actions and accepted responsibility.

Some mention should be made of the Government's request for incarceration here and its sentencing memorandum. It is impossible to square that request with prior requests by the Government for January 6 misdemeanor defendants that involved *identical or more egregious* facts and conduct, where the Government did not include a request for incarceration.

In fact, in *United States v. Paul Colbath*, No. 21-cr-650, the *same* assigned prosecutor in this case, filed a sentencing memorandum for a defendant charged with the *same* offense as Mr. Snow and who was also alleged to have been in the Capitol and did not engage in any assaultive or threatening conduct and accepted responsibility and cooperated with law enforcement upon his arrest. *See id.*, Govt. Sent. Mem. at 5-8 (D.E. 29). The Government, however, did not ask for incarceration for Mr. *Colbath* — not a single day. In fact, the Government limited its allocution to home confinement and probation. Though both sentencing memoranda contained the same proforma language that both individuals participated in a violent attack, there is no explanation for the Government's changing view on its sentencing recommendation for Mr. Snow. Regardless, just as Judge Randolph D. Moss rejected the Government's request for *home confinement* for Mr. Colbath, this Court should reject the Government's request for *incarceration* for Mr. Snow.

The Government's sentencing recommendations for identical conduct has changed profoundly as its prosecutions have progressed. Initially, consistent with sentencing in this jurisdiction and for traditional similar crimes in D.C. Superior Court, the Government was agreeing in its plea agreements to limit its allocution to *only a sentence of probation. See, e.g.*, *United States v. Anna Morgan-Lloyd*, No. 21-cr-164 (RCL); *United States v. Valerie Elaine Ehrke*, 21-cr-97 (PFF); *United States v. Donna Sue Bissey*, No. 21-cr-165 (TSC), *United States v. Douglas K. Wangler*, No.

21-cr-365 (DLF), and *United States v. Bruce J. Harrison*, No. 21-cr-365 (DLF). The Government then completely abandoned that position and adopted a bright line rule[10] for January 6 cases that it would never agree to a probationary sentence in a plea agreement. The Government then transitioned to a new strategy, while it would not agree to probation in its plea agreements, it would consider a recommendation of probation at sentencing. The Government then transitioned to probation with home confinement as a recommendation at sentencing and has now reverted to incarceration, with probation.

According to the chart accompanying the Government's Sentencing Memorandum (D.E. 26-1), on the offense of 40 U.S.C. § 5104(e)(2)(G), for which Mr. Snow is charged, the Government agreed to a sentence of probation in its plea agreement in five (5) cases (*id.* at 1 n.1) and allocuted at sentencing for a *non-incarceration* sentence in thirty-eight (38) cases. *Id.* at 2-6. Engaging in a complete reversal, it seeks incarceration for Mr. Snow, for whom the United States Probation Office believes warrants special consideration given the facts of this case. *See* PSR, ¶ 99 (discussing facts consistent with warranting a departure).

The Government disregards its own statistics showing that it has *not* been seeking incarceration for conduct far more egregious that Mr. Snow and cites to this Court comparator cases that are completely inapplicable to this case. For example, in its sentencing memorandum (at 24), the Government cites *United States v. Wickersham*, 21-cr-606, as a comparator case. Completely unlike the circumstances in this case:

---

[10] In regard to January 6, 2021, the Government has adopted a number of other bright line rules that did not exist prior to January 6, 2021, such as: (i) the request that a defendant agree to make available all of his or her electronic devices and social media accounts in their entirety in order to be entitled to enter a guilty plea; (ii) that in the alternative, a defendant debrief regarding the events of January 6, 2021, without the protections of a queen for the day immunity letter; and (iii) that everyone who entered the Capitol on January 6, 2021 must be charged and are ineligible for any consideration for a deferred prosecution agreement or a plea agreement to probation.

Wickersham was among the *first people to reach the Capitol* by ascending the staircase near the NW Scaffolding seconds after the police line there was breached; (2) Wickersham was among the *first people to breach* the Capitol via the Senate Wing Door, entering not long after other Capitol rioters Douglas Jensen (21-CR-06 (TJK)), Aaron Mostofsky (21-CR138 (JEB)), and Jacob Chansley (21-CR-03 (RCL))—a rioter that this Court recently sentenced to 41 months incarceration; (3) the defendant is seen speaking with a law enforcement officer, *swiping away*—and possibly *making physical contact with the officer's arm* while on the front line of rioters in the Crypt; (4) when defendant exited the Capitol through the door that leads to the Capitol's Upper West Terrace, he *held it open for other rioters to enter* and pointed back inside; (5) approximately five days after the riot, defendant told an FBI agent that he believed that his presence in the Capitol was *justified* given his *status as a taxpayer* and that the *whole things was a setup by antifa*; and (6) during that same interview, Wickersham admitted that he *saw the rioters committing acts of violence against law enforcement officers*, but still he went into and through the Capitol.

*Id.*, Gov't Sent. Mem. at 1-2 (D.E. 20). Even after being one of the first to breach the Capitol, assaulting an officer, holding a door open for other rioters, claiming that the destruction inside was caused by Antifa, and witnessing violence against officers, the Government *still* sought *no* incarceration for Mr. *Wickersham*, but only home confinement. Mr. Snow engaged in none of this conduct and yet the Government requests fourteen straight days of incarceration. The Government's constantly shifting sentencing recommendations (and purported justifications) do not promote the interests of justice or negate claims by some in our country that its treatment of January 6 defendants is more severe than other defendants who engage in similar conduct.

The Government's reliance on *United States v. Mazzocco*, 21-cr-54 (TSC) as an appropriate comparator is equally troubling. In that case, Mr. Mazzocco, prior to January 6, 2021, advertised on social media the "January 6 rally," and included a "Twitter post [that] promise[d] that the rally would be 'wild.'" *Id.*, Gov't Sent. Mem. at 2-3 (D.E. 20). Mr. Mazzocco also: (i) took a selfie in front of "a large crowd [that] had assembled at the doors and was forcing its way inside" (*id.* at 4); (ii) "fist-bump[ed]" a "police officer[] in riot gear" (*id.* at 5); (iii) contemporaneously posted on Facebook that "[t]he capital is ours!" (*id.* at 7-8); and (iv) claimed in text messages that "January 6 w[as] not a riot,

that he was simply protesting a fraudulent (in his mind) election, and that 'antifa' was to blame for the violence" (*id.* at 8-9). Mr. Mazzocco also refused to provide his body worn camera video that he wore on January 6 to the FBI when they interviewed him and continued to post on social media that January 6 was not a riot and Antifa was responsible for the damage. Even after all of this, the Government still sought probation for Mr. Mazzocco.

Just as Mr. Wickersham, Mr. Mazzocco's case shares no similarity with to this matter and its citation to this Court as authority for anything, other than leniency, is extremely concerning.

The Government's sentencing memorandum also reads as if the Government has now taken a position that anyone who entered the U.S. Capitol deserves, at a minimum, a sentence of incarceration.[11] The law does not work in this matter. This Court have a statutory obligation to fashion a sentence appropriate to the *specific* defendant and consistent with that defendant's *specific* conduct. *See* 18 U.S.C. § 3553.

As discussed above, consistent with U.S. Probation's recommendation, if there was ever a case that did not justify incarceration or home confinement, it is this one. If this Court believes a sentence of probation is in fact necessary, we submit that two months of unsupervised probation is appropriate.[12] This, in part, is because Mr. Snow cooperated extensively with the FBI and accepted

---

[11] By example, very recently, in *United States v. Prenzlin*, 21-cr-694, the Government made the *exact same* sentencing recommendation that it makes for Mr. Snow as to incarceration and conditions of probation. In that case, Mr. Prenzlin had no prior criminal history, was in the Capitol for four minutes, and did not engage in any assaultive or threatening conduct. Accordingly, Mr. Prenzlin was sentenced to just probation.

[12] Given Mr. Snow's current age and medical condition, *supervised* probation and 60 hours of community service is unnecessary and detrimental to his health and complicates his surgery and recovery schedule. Given safety concerns, Mr. Snow also asks that he be permitted to return his firearms back to his residence as a licensed and trained firearms owner. The prohibition against firearm possession on supervision is not mandatory, but rather purely discretionary. *See* 18 U.S.C. § 3563(b)(8). The purpose behind it is to protect supervision officers who have to supervise defendants. *Id.* at §§ 3603(2)-(3). Allowing for unsupervised probation removes the concerns in which the firearm

responsibility in this case immediately, and has been subject to pre-trial restrictions since his arrest in January 2022, without incident. This is also separate and apart from his conduct in this case being limited to walking in and walking out of the Capitol, conduct that prior to January 6, 2021, was subject to a deferred prosecution agreement or fine, if charged at all.

In our country, we judge a man by *his* actions alone, not those of others; we evaluate one day in his life, while also considering all of the other years in his life. We reward those who sincerely accept full responsibility for their actions, and we value actions taken to assist in the successful prosecution of other individuals — values that separate this country from so many other countries and values that support a sentence without incarceration in this case.

## CONCLUSION

Here, a sentence imposing a fine of $500 (along with the agreed-to restitution of $500 to the United States of America) is both an appropriate and just outcome for this case.

Dated: June 30, 2022

Respectfully submitted,

s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Robert Thomas Snow*

---

restriction is based. Mr. Snow did not commit any violent act and this is his first ever arrest. He has a constitutional right to defend himself and his petit misdemeanor conviction does not in anyway limit that enumerated constitutional right. *See New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. ---- (Jun. 23, 2022) ("If a 'core' Second Amendment right is burdened, courts apply 'strict scrutiny' and ask whether the Government can prove that the law is 'narrowly tailored to achieve a compelling governmental interest.") (citations omitted).